The panel convenes this morning with Judge Van Antwerpen as a part of the panel. Joining us by audio, Judge Van Antwerpen, can you hear me? I can, and happy St. Patrick's Day. Yes, this is the way we celebrate St. Patrick's Day now. Affairs are sadder than I thought, but we'll move on. Happy St. Patrick's Day to you, Judge Van Antwerpen. And may I call the first case, which is Balsam v. Secretary of State of New Jersey. Mr. Gregory. Good morning, Your Honors. With the Court's permission, I'd ask that I be permitted to argue for 11 minutes, and Mr. Peace reserve his entire four minutes for rebuttal. Very well. And I'd also request that we be permitted to rely on our papers with respect to the state claims. And if the Court does have any questions that it wants to ask, I'll just step aside and Mr. Peace can answer those and take up some of my time. That's satisfactory. Thank you, Your Honor. Your Honor, there's significant litigation ongoing across the country concerning the way in which our electoral process is going to be conducted to pass constitutional muster. This litigation concerns a real conflict between the rights of stakeholders, that is, the rights of parties, political parties, candidates, states, and voters. Our case involves the right of individual voter to cast a meaningful vote and the state's obligation to protect this right. This case is an outgrowth of a system that simply doesn't work and is unconstitutional. Isn't that an argument that you ought to be taking to the New Jersey legislature? If you've got a problem with how candidates are selected, why isn't your solution to go to the New Jersey legislature and say, we don't think this is producing the best candidates or the best method to ensure everybody feels like they're getting a voice in the selection of candidates? Why should the courts dictate that? Well, I think there's two reasons. One, that there's a fundamental right at stake. And in California what happened was initially there was a popular referendum which changed the primary system, found to be unconstitutional. And then there was a second effort which was passed and found to be constitutional. But also the parties control the legislature, frankly, Your Honor. But your concern, if I understand it, and correct me if I'm wrong about this, I think your argument is that all voters in New Jersey, regardless of party affiliation, have a constitutional right to participate in anything that ends up impacting the general election. And that New Jersey's closed primary system impacts the general election, and therefore all parties regardless, anybody regardless of party affiliation, should get to participate in any primary. Have I got the logic of your argument correct? You do. All right. Go ahead. So if that's the logic of the argument, my question to you is how do we square that with cases, multiple cases that say, including the California case Jones, that say that's not a problem, that selection method for, it's not a constitutional problem to allow the parties to have their associational rights. Well, I'm glad you asked that question because Judge Scalia really dealt with that, I thought, in a brilliant way. What he said was, during the main body of the opinion was, look, if you want to vote in this context, in a partisan primary election, simply join the party. And the argument for the free association of parties was we want to maintain ideological purity. And there was an inconsistency between that position and saying, well, if you don't agree with the party, simply join the party. But he was smarter than that. And I want to read a quote to this court, which I think really, really solves this question, or goes a long way to solving it. And this is from the very last paragraph of Judge Scalia's opinion. Respondents' legitimate state interest and the petitioner's First Amendment rights are not inherently incompatible. To the extent they are, in this case, the state of California has made them so by forcing political parties to associate with those who do not share their beliefs. Now what I'd like to do is to change the parties, and I don't like to compare California to New Jersey because it's an invidious comparison. But respondents' legitimate state interest and petitioner's First Amendment rights are not inherently incompatible. To the extent they are, the state of New Jersey has made them so by forcing unaffiliated voters to associate with those who do not share their beliefs. Judge Scalia didn't stop when he said, in this case, it's a partisan primary. They have the right to select their nominees, political parties. He went further, and he came up with a solution to the problem. And he said, if you want to protect the legitimate rights of voters, you want to protect the rights of parties to organize and pick a nominee, then do it in such a way where you have a nonpartisan primary election. No, well, he didn't say do it in a way. I mean, I guess that's your interpretation of where he's going, but he certainly didn't say that, right? Well, he did say, Your Honor, he said, if you want to protect the rights of voters to choose and we have to protect the rights of parties to associate, the way to do it is to do a top two and California followed his lead and did it. Even if we were to assume that that was his suggestion, that wasn't a constitutional ruling. The constitutional ruling was that the closed system was okay, wasn't it? Well, no, I think the constitutional ruling was that given the context of this case, which is a partisan blanket, partisan primary, the parties have a right to freely associate. But the stakeholders in that case were the parties and the state of California and voters. But what he did say was that the heaviest burden, and this is really the key to our case, the heaviest burden that you can ask a party to accept is to associate with people that don't share their beliefs. Let me stop you right there with your use of the word burden, because I want to seek some further clarification from you about the analytical process we're going to go through here. We are actually required to engage in a weighting process here, aren't we? Yes, sir. And so what you must first do in raising the First and Fourteenth Amendment issues that you've raised is to identify a burden or burdens that have been placed upon independent voters, right? Yes. And that burden here, just for clarification, is what? Well, I think we just looked at just... In fact, I think it specifically uses the term that what you're trying to do is pry open a state-sanctioned closed primary system. That's not exactly what you're doing, is it? No. You're exactly right, Your Honor. That's not what we're doing. And I think that the burden here has really been established by the Supreme Court and Jones. What Judge Scalia said is there is no heavier burden than forcing individual members of a party, because that's what they are, to accept voters that don't share their political philosophy. The burden is the same for our clients who are real people who may have left the political party with a heavy heart. I am left where I started in this case in reading your brief, and that is in not really knowing what it is you and your clients ask for. Judge Jordan began by asking you if your remedy really ought to be sought in the legislature, and I am wondering precisely that. What is it that you seek to have implemented here in lieu of the status quo? Well, Judge, what we would ask this court to do is to recognize that we're the state in a position where there was no alternatives other than to have closed primaries where you had these two rights conflicting against each other, the right of the individual voter to cast a meaningful vote, the right of political parties to associate. This court would be in a very difficult position, and that's why I think it's so important that Judge Scalia pointed out in great detail at the end of the opinion what we are asking this court to do is to find that a system that locks out 47 percent of the people of the electorate at a critical stage where up to 90 percent of the people are elected. How are they locked out when there is a petition mechanism that can be employed to get an alternative candidate, that is an alternative to the two major parties on the ballot? Doesn't that provide them with a means of access? It really doesn't, because unaffiliated voters can't really be treated like a block of voters. These people, the only thing they share... Isn't that just inherent in the democratic process? If they can't get enough traction to build a coalition that meets the percentage that the legislature has said is sufficient to be able to get yourself on the ballot, then isn't that simply a failure on their part to mobilize, to generate ideas, to have those ideas discussed and accepted by a sufficient number of people to provide for ballot access? I would say no. I would say that the responsibility really lies with the state of New Jersey to consider that you have individual voters that can't vote in the integral stage where the candidate is chosen, and if there's another viable alternative, which Judge Scalia talked about and California's adopted and Washington... I don't want to interrupt you, but I do want you to answer the question that I think has been put to you, which is, if you have access to the ballot and you do through a petition process, isn't the problem that you've got fundamentally a political one and not a constitutional law problem? If you've got access to the general ballot, then you've got an opportunity to take your message to the voters, where in the general election there is a fundamental right to vote. You know, first of all, I don't see that as being a viable solution to the problem because the parties control, but more importantly, these cases have been... Well, hold on. The parties don't control the petition access. The New Jersey law is very specific on that point. You can, with a certain number of signatures, get access to the ballot, and then if your ideas and your message are powerful and your organizational skills are good, you can get votes. And in fact, as a mathematical point, one could actually argue that it's easier in terms of aggravating signatures to get on the ballot that way than it is to muster enough to win in a party primary, right? No, there's no question. I mean, New Jersey's good on that, and you're absolutely right. But the problem I have is that if we look at the way the election process has been organized by the state of New Jersey and we apply constitutional analysis like they have for the parties across the country, the individual voter is really the right that preserves all these rights, the fundamental right. The rights of parties really derive from the right of individual voters, and if a system's devised and implemented where they can't vote unless they join a party, I mean, can you imagine? Go ahead. That's the problem. See, this is, here's the fundamental problem, and I think this is the problem that Judge Chesler was trying to point to when he ruled in the district court. You keep using the phrase, they can't vote, but they can vote. The Supreme Court in Jones was very specific about making a distinction between the primary candidate-selecting election and the general election and saying that that fundamental right to vote, that's in the general election, and that the candidate-selecting part of this, that is not where there's a constitutional right. There's not a constitutional right to vote in a closed primary because if that were the case, as Justice Scalia put it, then what was on the ballot there as Proposition 198 wouldn't just have been something that was constitutionally permissible, it would have been constitutionally mandated, and he said nobody thought that was the case, nobody was claiming that was the case, and I think the logic he's put forth there is impeccable. I mean, if it were true, then it would be constitutionally mandated that every primary be open, but that's never been accepted anywhere in the country. Well, that's right. You want us to be the first. We want you to be the first, and this is happening across the country. I think you've put your finger on it, Mr. Gregory, and we are almost four minutes over your time. I want to give Judge Van Antwerpen an opportunity to get in if he has questions. Judge Van Antwerpen? No questions. All right. Thank you very much, Mr. Gregory. We'll have Mr. Peace back on rebuttal. Ms. Kelly? Good morning, Your Honors. I'm Assistant Attorney General Donna Kelly. I'm here for the New Jersey Secretary of State. Ms. Kelly, you would concede, would you not, that as a matter of constitutional analysis, there is a burden here placed upon the independent voters. If there is a burden, it's because fundamental right to vote and protection is, quote, implicated here. Yes, you would say that there is a burden, but it is such a slight and minimal burden. I mean, as Justice Scalia said in the Jones decision, that if you want to participate in the partisan primary process in New Jersey, you simply have to affiliate. And it's so easy in New Jersey. The day of the election, if you've never voted before in a primary, a new voter, you can. But doesn't that kind of miss the point? They don't seem to be complaining so much. Maybe this would be different if you were telling them they had to register two years in advance. Then they might be complaining about the time. But I take their complaint not to be, oh, it's so onerous to join a party, but holy smokes, I don't want to have anything to do with those people. And I don't want my name associated with those people. And I don't want to be registered as if I'm agreeing with those people because I don't agree with those people. I want to have a chance to help select candidates for the general election. And I don't want to be the person that sits at the back and waits until I'm given two horrible choices and then told, go ahead, now you've got to exercise your fundamental right. That's what I understand their argument. I think that is what their argument is. Their argument is, through the papers and through the lower court, it seemed to be kind of a moving target in some respects, with all due respect to them. I mean, Judge Chesler said that they were trying to pry open the process. I don't think they want to join. I think what they would like, from what I can figure out, is that their now tactic is to say that let the political parties make their choices, but the state is obligated to provide a forum for all of us and affiliates for us to have some say at the primary stage for purposes of the general election. But there is no constitutional obligation to do that because the courts have been more than clear. There's no fundamental right to vote in a primary election. And why is that? Because it's really what was articulated best in Jones and the Nader case. What is the purpose of a primary? And I really do like the Nader case the most because I think it raises all the issues that the plaintiffs, the appellates have raised here and the court's appropriate response. I mean, in the Nader case, the appellants were saying that we've been denied the right to vote, that it's an integral part of the process. We're interested in a primary election result. You are forcing us to affiliate with people we don't want to affiliate with. And, hey, by the way, there's a lot of unaffiliated voters in the state of Connecticut, and it's better democracy if somehow we shut down closed partisan primary elections. And the court, on summary affirmance by the U.S. Supreme Court, said that's not true. There's no fundamental right to vote in a partisan primary because the state has the right to determine that if a party has established sufficient modicum of community support, as the top and the major parties have in our state and really across the country, that the state, for purposes of preserving the integrity of the process, let's have a mechanism. Let's use the election machinery of our state so that all members of the party can vote and it preserves the confidence that this party is being preserved in its identity. So the assertion by your opponents that the state has not articulated its own reason that the Jones case and other cases rely on private interests, the private interests of the party, your response to that is no, the state has an interest because? State has articulated its interest in all the briefing, in all the arguments below, and in this court. And what I would refer the court to is the Klingman case. I'm looking at page 15 of your brief and about the most that I've seen is one sentence. It is enough that the state has a legitimate interest, and it begins, it is enough that the state has a legitimate interest in protecting the overall integrity of the historic electoral process as well as the associational rights of political associations, maintaining ballot integrity, avoiding voter confusion, and ensuring electoral fairness. Yes, Your Honor, and I think that's sufficient, and I think because we've relied upon the Nader case, and the Klingman case I thought is interesting on that point too about a state's interest, because it rebuffed the argument that a state was only articulating the interest of the private parties, i.e. the Democratic Party and the Republican Party. But in the Klingman case, Justice Thomas made it clear that the state, no, does have an independent interest in wanting to have closed partisan primary elections, and the interest that we've articulated in a sentence or two in our brief, supported by the Nader decision, Klingman and Jones, I think are sufficient to overcome any contention on the other side, if you will, that we have not articulated our interest, and the state really has no independent interest, you know, opposite of the, apart rather from the political parties. And at the end of the day, it is really a legislative issue. This court would be the first court in the country to rule that a closed partisan primary election is unconstitutional, and it would go against Nader, Klingman, Jones, American Party versus Texas. And at the close of the Nader decision, again, I keep referring to that because I think it is most instructive, and I'm just paraphrasing what the district court said, is that, yes, it's a popular course to seek change by judicial fiat. It's quicker, and it's more academically attractive. What does that say about our legislative process? But that it works really in degradation of the democratic system. There is no bar to the appellants going across the river to the West State Street in Trenton and arguing their case under the gold dome of our statehouse that we need to change the system, or we want you to change the system, legislature. Their response, as I think you heard Mr. Graber say, is that under that gold dome are a bunch of Democrats and Republicans. You can hardly expect them to be even-handed and look kindly on this, that politics is about power. They have the power, and the only way to bust that power loose is for somebody else, some neutral arbiter, to take a look at it. Well, number one, as you indicated earlier, is that we have a very open, fluid process in New Jersey in terms of independents having the ability to get on the ballot and to get elected. And, yeah, it's not easy, but democracy isn't easy. I mean, you know, the Democratic and Republican parties, I guess through the decades or centuries or whatever, have done, you know, you have to do the hard work. You've got to do the legwork, the footwork. You've got to be out there and convincing people to, you know, vote for your candidates, sign the petitions. Again, our ballot access for a petition is much smaller than if they were going to go through the partisan process. So, yeah, it's not easy. Democracy isn't easy, but this is a legislative matter. This is not a matter for this court to find that there's a constitutional violation. There's no fundamental right to vote in a partisan primary. There's no equal protection issue. Again, I refer to the Klingman decision where they said the state clearly can classify. If you are to say there's a burden, it's minimal. The state interest, I just rest with relying upon our briefing as well as the cases that we cited, and this really is a matter for the legislature. Judge Van Antwerpen, do you have questions for the state of New Jersey? I do not, Your Honor. Unless you have other questions, Your Honor, we would rest. Thank you very much. Thank you very much. Mr. Pease, rebuttal. Thank you very much, Your Honors. I'd like to start off with three main issues, I think, brought up by this panel. The first and most important, I think, is when Justice Jordan asked the question about the remedy. I think it's very important to understand that we aren't asking for a particular remedy because that's the line you cross when you say what's a political question and what's a question about political rights. We're here to defend political rights. It's up to the court. Well, you're also in a court of law, and in a court of law, you're obligated to tell us what you want. I mean, we can't issue an opinion that says sort of in abstract terms that it's good for everybody to vote at all proper stages. I mean, we have to – either you're entitled to some legal remedy that we have the power to give you or you're not. So that's why we're asking and pressing you on what exactly is it you want because at the end of this case, we're going to issue an opinion in an order of some sort, and this is your opportunity to help shape what that looks like. So what is it that you want said? Well, what we want, as you mentioned before, this could be a historic case because nobody has ruled this, but what we want is a declaration that the closed primary does not follow the one-person, one-vote standard that was first articulated in a case about primary elections. That one-person, one-vote standard came from Gravey Sanders. It concerned a primary election. It wasn't only until later that the court consolidated all the other cases going on around the country, not differently from the cases going on from Hawaii to South Carolina today, and said, you know what? They're right. The one-person, one-vote standard is violated by malapportionment, and it's up to the states to recognize that. I think it's an opportunity for this court to say what that one-person, one-vote standard means in terms of the partisanship that's going on today and giving parties exclusive access to the first and most integral stage of the election. When you say exclusive access, aren't you assuming, particularly when you say the most integral part of the process, aren't you elevating primary elections over the general election? Well, not at all. We have to look at the election process as a whole. There's nothing in the Constitution that says a state even needs to have a primary system. I could think of... Indeed. Thank you. That's exactly the point. If there's nothing that says you have to have a primary election, how can there be a constitutional right to participate in it when it's something that doesn't have to exist at all and when there are other means of access to the general election ballot? Well, at the moment, the state creates it. They create the conflict. That's what Scalia was talking about in Jones. When the state creates a primary system, they create a conflict. In that case, the state created a conflict by creating a primary system that forced parties to allow independent voters to associate. So it has never worked? The primary system has never worked since its institution? Absolutely not. It did work, and the primary process itself was an effort to democratize. So what happened that has suddenly made it unconstitutional or maybe not so subtle? Well, I don't think it's so subtle. I mean, the facts on the ground have changed. People are walking away from the parties. They're making their own declaration that these parties don't represent me, and 90 percent of elections are now being decided in the primary because districts have been carved up. You have 90 percent of the population that says in the latest Gallup poll that Congress doesn't represent me. The facts have changed, and throughout history, we have to decide whether the constitutional standards we articulate. You know, in anticipation of this argument, I went back to a wonderful book that I read when I was a college student and that I noted had a copyright of 1960, a book written by one of the grand old men of American political science, Elmer Schatznyder, called The Semi-Sovereign People, and in that book, 65 years old now that it is, one of the points he made was how different our electoral system would operate if this huge mass of people who never show up to vote suddenly did so. There ain't anything new about this problem. I was in college a hell of a long time ago, and we're talking about it then. Boy. Yes, sir. Well, I'm just wondering if the issue that you raise is there's mass dissatisfaction, is the remedy for that not in the courts but in appealing to the dissatisfied voters? I mean, that's what it seems like the way to manage discontent among a voting populace is to present the voting populace with an alternative that will make them less discontented, not to have the court start telling the legislature how to organize elections. Well, I appreciate the question and the concern, but in this case, the state created a system where the only meaningful avenue to express that change is to give up a fundamental right and join a party. And the state's position is that it's okay to have a state, as an administrative procedure, it's okay to have as a qualification to gain that fundamental right to vote and have it counted. You have to join a political party. Now, in this country, the idea that political philosophies, whether it's political or religious, it's grounded in the idea that we can have whatever ideology we want. And we find it absurd to say, well, you can have the religious freedom, but you have to join one of two churches. That would be absurd. But here, it's the integral stage of our election, and we're saying- So maybe you don't have to join any church at all. Correct. I think we're a couple minutes beyond your allotted time for rebuttal. Let me again ask Judge Van Antwerpen if he has questions. I do not. All right. Thank you very much. Thank you, and I appreciate the additional time. Thank you. Kelly, thank you for your arguments. We will take the case under advisement.